IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMEDA MADIA WILLIAMS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATRIOT HOME CARE, INC. and PATRIOT HOME CARE HOLDING COMPANY,<br><br>Defendants. | Civil Action No.: 2:22-cv-404<br><br>Collective and Class Action<br><br>JURY TRIAL DEMANDED<br><br>Electronically Filed |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**INTRODUCTION**

Plaintiff Shameda Madia Williams, individually and on behalf of other similarly situated individuals, brings claims against her former employers Defendants Patriot Home Care, Inc. and Patriot Home Care Holding Company under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 331.101 *et seq.*, and the common law doctrine of restitution/unjust enrichment. The FLSA and PMWA mandate that employers pay employees who work overtime—that is, over 40 hours in a workweek—at least "one and one-half times" their "regular rate" of pay. Plaintiff brings this action to challenge Defendants' policy and practice of reducing their employees' regular hourly pay rates if those employees work overtime in order to avoid paying employees the full compensation to which they are entitled by law.

**PARTIES**

1. Plaintiff Shameda Madia Williams is an adult individual who resides in Allegheny County, Pennsylvania. She worked for Defendants as a "caregiver" (also known as a "direct care

worker") from February, 2021 through the end of January, 2022. At all times relevant to the allegations in this Complaint, Plaintiff was Defendants' "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and the PMWA, 43 P.S. § 333.103(h). She has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b). **Exhibit A**, attached hereto.

2. Defendant Patriot Home Care, Inc. is a Pennsylvania corporation located at 5700 N. Broad Street, Floor 2, Philadelphia, PA 19141.

3. Defendant Patriot Home Care Holding Company is a Pennsylvania corporation also located at 5700 N. Broad Street, Floor 2, Philadelphia, PA 19141.

4. Defendants provide home care services throughout Pennsylvania and Delaware under the name Patriot Home Care and are referred to hereinafter as "Patriot Home Care." Defendants jointly and/or singly constitute the "employer" of Plaintiff and all similarly situated employees, as described further below, within the meaning of the FLSA, 29 U.S.C. § 203(d), and the PMWA, 3 P.S. § 333.103(g).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's PMWA claim and her restitution/unjust enrichment claim pursuant to 28 U.S.C. § 1367(a).

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391. Defendants maintain an office and operations in this judicial district, Plaintiff was employed in and resides in this district, and the events giving rise to Plaintiff's claims occurred in this district.

## STATEMENT OF MATERIAL FACTS

**Employers Must Pay Employees One and One-Half Times their Regular Rate of Pay for Overtime and May Not Lower Pay Rates Because Employees Work Overtime**

8. The FLSA, 29 U.S.C. § 207(a), requires employers to pay employees "at a rate not less than one and one-half times the regular rate" at which the employee is employed for all hours worked over 40 hours in a week.

9. The PMWA, 43 P.S. § 333.104(c), likewise requires employers to pay employees "for overtime" hours above 40 in a workweek at a rate "not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary[.]"

10. The Department of Labor has promulgated regulations relevant to the meaning and enforcement of the FLSA that pertain to an employer's ability to lower its employees' hourly pay rates.

11. The regulations state that "[w]hile it is permissible for an employer and an employee to agree upon different base rates of pay for different types of work, it is settled under the Act that where a rate has been agreed upon as applicable to a particular type of work the parties cannot lawfully agree that the rate for that work shall be lower merely because the work is performed during the statutory overtime hours, *or during a week in which statutory overtime is worked*." 29 C.F.R. § 778.316 (emphasis added).

12. The regulations further state that "*where different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—the longer he works the lower the rate—the device is evasive and the rate actually paid in the shorter or nonovertime week is his regular rate for overtime purposes in all weeks*." 29 C.F.R. § 778.327 (emphasis added).

13. The regulations further state that "*[p]ayment for overtime on the basis of an artificial 'regular' rate will not result in compliance with the overtime provisions of the Act.*" 29 C.F.R. § 778.500 (emphasis added). "[T]he hourly rate paid for the identical work during the hours in excess of the applicable maximum hours standard cannot be lower than the rate paid for the nonovertime hours *nor can the hourly rate vary from week to week inversely with the length of the workweek.*" *Id.* (emphasis added).

14. The PMWA provides for employee rights that are at least as expansive as those provided for by the FLSA. *See Bayada Nurses, Inc. v. Pennsylvania Department of Labor & Industry*, 8 A.3d 866, 883 (Pa. 2010) ("the federal statute establishes only a national floor under which wage protections cannot drop").

15. As such, the rationale of the DOL's FLSA regulations cited above applies with equal force to the PMWA.

16. Moreover, employers may not evade their statutory obligations under the FLSA or PMWA by way of any purported "agreement" with its employees to do so. *See Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."); *Chevalier v. General Nutrition Centers, Inc.,* 220 A.3d 1038, 1055 (Pa. 2019) ("Employe[e]s employed in such occupations are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and 'freedom of contract' as applied to their relations with their employers is illusory.")

4

**Defendants, as a Matter of Policy, Lowered the
Regular Pay Rates of Employees Who Worked Overtime**

17. Upon information and belief, Defendants maintain or maintained a policy whereby they lower or lowered the hourly pay rates of employees who work overtime solely because they work overtime.

18. In 2018, Kim Channay Hauser filed a federal lawsuit against one of the Defendants here, Patriot Home Care, Inc.

19. Ms. Hauser's lawsuit alleged that Patriot Home Care, Inc. "has a policy whereby it will decrease a home health aide's regular rate of pay solely because he or she is scheduled to work more than 40 hours per week." First Amended Class and Collective Action Complaint, ECF No. 13 at ¶ 23, *Hauser v. Patriot Home Care, Inc.,* 2:18-cv-3126-JCJ (E.D. Pa. Oct. 13, 2018).

20. Ms. Hauser alleged that as an employee of Patriot Home Care, Inc. in Philadelphia, she was subjected to this policy when her hourly pay rate was lowered from $13 to $12 and $11 because she worked overtime. *See id.* at ¶¶ 27-35.

21. Ms. Hauser brought her suit on behalf of similarly situated employees and brought claims under the FLSA, the PMWA, and the unjust enrichment doctrine challenging Patriot Home Care, Inc.'s alleged policy of reducing pay rates because employees worked overtime. *See id.*

22. Patriot Home Care, Inc. did not file an answer to Ms. Hauser's complaint.

23. Instead, following mediation, the parties reached a settlement whereby Patriot Home Care, Inc. agreed to pay $325,000.00 to resolve the *Hauser* suit. Settlement Agreement and Release, ECF No. 25-1, *Hauser v. Patriot Home Care, Inc.,* 2:18-cv-3126-JCJ (E.D. Pa. July 19, 2019).

24. The parties in *Hauser* agreed that the settlement applied to a "Settlement Class" defined to mean Ms. Hauser "and all persons who were employed by Patriot Home Care, Inc. as

home health aides, alternatively known as direct care workers, who had their hourly wage rate reduced at any time during their employment between July 25, 2015 and the date that the Settlement Agreement is executed by all Parties, unless removed from the Settlement Class by timely opting out of the Settlement." *Id.*

25. The *Hauser* settlement was executed on June 12, 2019.

26. There were approximately 447 "Settlement Class Members" covered by the *Hauser* settlement. *Id.*

27. The United Stated District Court for the Eastern District of Pennsylvania approved the *Hauser* settlement on December 3, 2019. Order Granting Final Approval of the Settlement Agreement, ECF No. 35, *Hauser v. Patriot Home Care, Inc.,* 2:18-cv-3126-JCJ (E.D. Pa. Dec. 3, 2019).

28. In February, 2021, Ms. Williams began working for Patriot Home Care in Pittsburgh as a caregiver/direct care worker.

29. On February 10, 2021, via email, Patriot Home Care sent Ms. Williams a form to sign electronically that reflected an hourly pay rate of $11.00. When Ms. Williams asked whether the pay rate was negotiable, a Patriot Home Care employee responded to her via email on February 11, 2021 stating, "We are classified as a non-skilled agency and therefore, our pay rate starting for each employee is $11/hr unfortunately." **Exhibit B**, attached hereto.

30. On February 15, 2021, Patriot Home Care sent Ms. Williams a form which bore the Patriot Home Care logo, was titled "Qualified Direct Care Worker (DCW) Rate Sheet," and listed her "DCW Rate per hour" as $11.00; Ms. Williams electronically signed that form. **Exhibit C**, attached hereto.

6

31. However, shortly after signing that form, Ms. Williams was told by one of the company's management employees that because of the number of hours she was scheduled to work each week, her hourly pay rate would be changed from $11 to $10.25. At that time, Ms. Williams was scheduled to work 56 hours per week.

32. On February 16, 2021, Patriot Home Care sent Ms. Williams a second "Qualified Direct Care Worker (DCW) Rate Sheet" which listed her "DCW Rate per hour" as $10.25; Ms. Williams electronically signed the new form. **Exhibit D**, attached hereto.

33. Patriot Home Care paid Ms. Williams $10.25 per hour until on or around November 9, 2021, when one of the company's office managers informed Ms. Williams that she was getting a "raise" and that her hourly pay rate would be increased from $10.25 to $11.

34. Patriot Home Care asked Ms. Williams to electronically sign another form bearing the Patriot Home Care logo and titled "Acknowledgment of Base Rate Change" which reflected the rate change from $10.25 to $11, and Ms. Williams did so. **Exhibit E**, attached hereto.

35. Subsequent to that rate increase, Ms. Williams was having a conversation with a Patriot Home Care case manager about restrictions that the company was imposing upon the number of hours she was permitted to work in a week. In that conversation, the care manager informed Ms. Williams, in so many words, that Patriot Home Care was not supposed to be reducing employees' pay rates as it had done to her in the past when it lowered her rate to $10.25 per hour.

36. Patriot Home Care's own documents make clear that it had a policy of reducing employees' hourly pay rates based upon the number of hours they worked.

37. For example, upon information and belief, the "Qualified Direct Care Worker (DCW) Rate Sheet," two of which are attached hereto as **Exhibit C and D**, is a standard form used by Patriot Home Care for its employees.

38. The "Qualified Direct Care Worker (DCW) Rate Sheet" states that "In the event of Increase or Decrease of Hour(s) the Direct Care Worker`s Pay Rate may be subject to change." *Id.*

39. As discussed above, Ms. Williams was asked by Patriot Home Care to sign a form titled "Acknowledgment of Base Rate Change." **Exhibit E**. Upon information and belief, this too is a standard form used by Patriot Home Care for its employees.

40. An employee handbook for Patriot Home Care, provided to Ms. Williams via email on September 13, 2021, likewise provided that the company would change employees' pay rates:

> At PATRIOT HOME CARE, pay depends on a wide range of factors, including pay scale surveys, individual effort, profits, and market forces. If you have any questions about your compensation, including matters such as paid time off, commissions, overtime, benefits, or paycheck deductions, speak with your Supervisor.
>
> All hours worked beyond your scheduled hours must be approved in advance by Human Resources. Failure to work unauthorized hours may result in discipline, up to and including discharge. The maximum number of hours a DCW is able to work per day is 16 hours per applicable law.
>
> **DCW rates of compensation may be increased or decreased from time to time. No rate change will be implemented without notification before implementation of the change.**

**Exhibit F**, attached hereto (emphasis in original).

41. While she was employed by Patriot Home Care, Ms. Williams consistently worked over 40 hours in a week and was paid at the reduced hourly rate of $10.25 from on or around the beginning of her employment to sometime on or around November 9, 2022.

42. When Patriot Home Care increased Ms. Williams's hourly pay rate from $10.25 to $11 in November 2021, it did so prospectively only. In other words, it did not make any payment of back pay to her as though her rate was $11 for her entire employment.

8

43. Ms. Williams is personally aware of two other Patriot Home Care employees who she understands to have worked over 40 hours a week and had their hourly pay rates reduced as a result.

44. Ms. Williams ultimately ceased work for Patriot Home Care as of February 2022.

### Patriot Home Care Willfully Violated the FLSA

45. The overtime requirements of the FLSA, 29 U.S.C. § 207(a), and the guidance promulgated at 29 C.F.R. §§ 778.316, 778.327, and 778.500, plainly forbid employers from subjecting employees to a rate reduction scheme in which a lower "regular rate" is paid when an employee works overtime, and the new lower rate is justified by no factor other than the fact that the employee worked overtime.

46. As a result of the practice described above, Defendants deprive their employees of both the straight-time and overtime pay that they would have received had they been paid at their true "regular rate," including in the weeks in which they purportedly pay for overtime at one and one-half times their so-called "regular rate."

47. Upon information and belief, Defendants were, or should have been, aware of the requirements of FLSA, particularly in light of the *Hauser* litigation, and sought to intentionally evade those requirements by using the rate reduction scheme described above.

48. Upon information and belief, Defendants' conduct was in willful disregard of their obligations under the FLSA.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS[1]

### The Case Should be Certified as an "Opt-In" Collective Action Under the FLSA

49. Plaintiff brings this action under the FLSA, 29 U.S.C. § 216(b) as an "opt-in" collective action on behalf of all similarly situated individuals who worked for Defendants at any time within three years prior to this action's filing date through the final disposition of this case, and who were subject to Defendants' rate reduction scheme described above, i.e., those who were paid a reduced hourly rate because they were scheduled to work overtime.

50. At all relevant times, Plaintiff and said individuals were similarly situated, had substantially similar job requirements, and were subject to Defendants' common rate reduction practice.

51. The identity of these individuals may be determined from records under the control of Defendants.

52. These individuals would benefit from the issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join in the lawsuit.

### The Case Should be Certified as a Class Action Under Fed. R. Civ. P. 23

53. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff also brings this action under the PMWA on behalf of all similarly situated individuals who worked for Defendants in Pennsylvania at any time within three years prior to this action's filing date through the final disposition of this case, and who were subject to Defendants' rate reduction scheme as described above, i.e., those who were paid a reduced hourly rate because they were scheduled to work overtime (the "PMWA Class").

---

[1] Plaintiff reserves the right to amend or modify the proposed collective and class definitions below at any time before moving for collective and class certification.

54. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff also bring this action under the doctrine of restitution/unjust enrichment on behalf of all similarly situated individuals who worked for Defendants in Pennsylvania at any time within four years prior to this action's filing date through the final disposition of this case, and who were subject to Defendants' rate reduction scheme as described above, i.e., those who were paid a reduced hourly rate because they were scheduled to work overtime (the "Restitution Class").

55. Upon information and belief, the number of class members in each class is large enough that joinder of individual members in this action is impracticable. Defendants maintain eight offices throughout the state of Pennsylvania and employ hundreds if not thousands of employees. The exact number of impacted employees can be identified by Defendants' records.

56. There are common questions of law and fact, including whether Defendants' rate reduction practice violates class members' rights under the PMWA, whether Defendants should make restitution to class members as a result of the practice, and whether Defendants were unjustly enriched by this practice.

57. For the same reasons, the claims of class members are typical of the claims of Plaintiff, and there is no conflict between Plaintiff and any other class member.

58. Plaintiff will fairly and adequately protect the interests of the classes. Attorneys for Plaintiff are experienced and capable class action litigators and will fairly and adequately represent the interests of the classes.

59. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A). The prosecution of separate actions by individual members of the classes would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

60. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendants have acted on grounds generally applicable to the classes by subjecting all of them to the rate reduction scheme described above.

61. Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT ONE

### Fair Labor Standards Act, 29 U.S.C. § 207(a)
### Overtime and Overtime Gap Time Violations
### (Plaintiff, on behalf of the Collective, against Defendants)

62. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

63. Under the FLSA, an employer must pay an employee at least one and one-half times her regular rate of pay for each hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

64. The regulations at 29 C.F.R. §§ 778.316, 778.327, and 778.500 plainly forbid employers from subjecting employees to a rate reduction scheme where an employer lowers the employee's "regular rate" based purely on the fact that the employee works overtime.

65. The regulation at 29 C.F.R. § 778.315 also states that "[o]vertime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. *This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours*

*under his contract (express or implied) or under any applicable statute has been paid.*" (Emphasis added).

66. Defendants' rate reduction scheme unlawfully deprives Plaintiff and other similarly situated employees of overtime compensation for hours worked over 40 in a workweek.

67. Defendants' rate reduction scheme also unlawfully deprives Plaintiff and other similarly situated employees of straight-time compensation for hours worked *under* 40 in a workweek with overtime ("overtime gap time").

68. Assuming that Defendants' rate reduction scheme is found to violate the FLSA, if Plaintiff is able to recover the overtime compensation that she would have received but for the rate reduction, but not the overtime gap time compensation she would have otherwise received, then she will be unable to recover the majority of the wages of which she was deprived as a result of the challenged rate reduction scheme. Likewise, Defendants will still benefit from an unlawful scheme.

69. The same will be true of any similarly situated employee who worked overtime but less than 66.67 total hours in a workweek, because overtime paid at one and one-half times an employee's regular rate only exceeds 40 hours paid at an employee's regular rate when the overtime hours exceed 26.67.

70. As a result of Defendants' willful acts, as recited above, Plaintiff and members of the collective have been unlawfully deprived of overtime and overtime gap time compensation.

## COUNT TWO

### Pennsylvania Minimum Wage Act, 43 P.S. § 333.104(c)
### Overtime and Overtime Gap Time Violations
### (Plaintiff, on behalf of the PMWA Class, against Defendants)

71. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

72. Like the FLSA, the PMWA, which is at least as protective of workers' rights as the FLSA, forbids Defendants' rate reduction scheme.

73. As a result of Defendants' acts, as recited above, Plaintiff and members of the PMWA Class have been deprived of overtime and overtime gap time compensation.

## COUNT THREE

### Restitution/Unjust Enrichment
### (Plaintiff, on behalf of the Restitution Class, against Defendants)

74. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

75. Defendants benefitted from the unpaid work of Plaintiff and the class members and it would be unjust for Defendants to keep the wages related to this work.

76. Moreover, any purported "agreement" by Plaintiff and the class members to work at reduced rates are void, as enforcement of such "agreements" would frustrate the purpose of the FLSA and PMWA.

77. Plaintiff and the Restitution Class members are entitled to restitution in the amount of the difference between what they were paid at reduced hourly rates while they were subjected to the rate reduction scheme and what they would have been paid at unreduced rates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

14

A. That the Court declare that this action is a proper FLSA collective action and certify the proposed collective pursuant to 29 U.S.C. § 216 after notice to the collective;

B. That the Court declare that Defendants willfully violated their statutory obligations under the FLSA by depriving Plaintiff and other members of the collective of the wages to which they are entitled;

C. That the Court certify this action as a Rule 23 class action;

D. That the Court award to Plaintiff and members of the collective and Rule 23 classes unpaid wages, restitution for same, liquidated damages, and pre and post judgment interest thereon;

E. That the Court issue an injunction forbidding Defendants from utilizing the rate reduction scheme described above;

F. That the Court award Plaintiff's attorneys' fees and costs of the action, to be paid by Defendants; and,

G. That the Court enter such other relief as it shall deem just and proper.

Respectfully submitted,

Dated: March 7, 2022

*s/ Edward J. Feinstein*
Edward J. Feinstein PA29718
efeinstein@fdpklaw.com

Ruairi McDonnell PA316998
rmcdonnell@fdpklaw.com

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA  15219
T.: (412) 281-8400
F.: (412) 281-1007

***Attorneys for Plaintiff***