**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHAMEDA MADIA WILLIAMS, individually and on behalf of others similar situated

Plaintiff,

v.

PATRIOT HOME CARE, LLC, formerly known as PATRIOT HOME CARE, INC.,

Defendant.

Case No.: 2:22-CV-00404-CCW

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATRIOT HOME CARE, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## TABLE OF CONTENTS

**PAGE**

**Table of Authorities** ........ ii

**I RELEVANT FACTUAL BACKGROUND** ........ 3

**II. STANDARD OF REVIEW** ........ 4

**A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction** ........ 4

**B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted** ........ 6

**III. LEGAL ARGUMENT** ........ 6

**A. The Complaint Cannot Survive a Factual Challenge to the Court's Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).** ........ 7

**1. Pay records show Ms. Williams never experienced a rate decrease during her employment and that she was paid 1.5 times her agreed-upon regular rate for all hours above 40 in each workweek.** ........ 8

**2. Because Ms. Williams has suffered no injury-in-fact, this Court lacks subject matter jurisdiction.** ........ 8

**B. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted for Overtime Violations Under the FLSA or PMWA.** ........ 9

**1. Patriot's pay practices are lawful.** ........ 9

**2. Even if the Court finds the pay practice at issue questionable, the Complaint does not allege Ms. Williams was subjected to it.** ........ 11

**C. Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment** ........ 14

**D. The Complaint Should be Dismissed With Prejudice.** ........ 14

**IV. CONCLUSION** ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006)....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Bansept v. G & M Automotive*,
434 F. Supp. 3d 253 (E.D. Pa. Jan. 22, 2020)....................7

*Castleberry v. STI Grp.*,
863 F.3d 259 (3d Cir. 2017)....................6

*Chesbro v. United States*,
No. 1:18-CV-88-SPB, 2020 WL 3573768 (W.D. Pa. June 30, 2020)....................5

*Davis v. Abington Mem'l Hosp.*,
765 F.3d 236 (3d Cir. 2014)....................11

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000), *modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)....................5

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)....................4

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)....................4, 5

*Jordan v. Meridian Bank*,
No. CV 17-5251, 2018 WL 6079314 (E.D. Pa. Nov. 20, 2018)....................7

*Malamphy v. Abundant Life Home Health Agency, Inc.*,
No. 8:16-CV-327-T-17TGW, 2017 WL 2876310 (M.D. Fla. May 4, 2017) ..........7, 10, 11, 13

*Parth v. Pomona Valley Hosp. Med. Ctr.*,
630 F.3d 794 (9th Cir. 2010) ....................10

*Schuchardt v. President of the U.S.*,
839 F.3d 336 (3d Cir. 2016)....................6

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000)....................15

*Twp. of Piscataway v. Duke Energy*,
488 F.3d 203 (3d Cir. 2007)....................5

*Vacula v. Chapman*,
2020 Pa. Super. 50, 230 A.3d 431 (Pa. Super. 2020) ....................14

*Walsh v. Kynd Hearts Home Healthcare, LLC*,
2022 WL 1018636 (E.D. Va. Apr. 5, 2022) ....................11

*Williams v. Amazon, Inc.*,
No. CV 20-408-KSM, 2021 WL 5631753 (E.D. Pa. Nov. 30, 2021)....................15

**Statutes**

43 P.S. § 260.4 ....................9

29 U.S.C. § 203(e)(1)....................7

29 U.S.C. § 203(g) ....................7

29 U.S.C. § 207(a)(1)....................7

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ....................1 and *passim*

Pennsylvania Minimum Wage Act 43 P.S. §§ 331.101 *et seq*. ....................1 and *passim*

**Regulations**

29 C.F.R. § 778.316 ....................10, 12

29 C.F.R. § 778.327 ....................12

**Other Authorities**

United States Constitution Article III ....................4, 5

This case was brought by a disgruntled former employee, who attempts to characterize legitimate pay practices as unlawful in her effort to benefit therefrom. Her unsupportable claims are even more outrageous given that the practices she purports to challenge were never imposed on her, such that she suffered no injury. In short, she has no standing to bring the asserted claims on behalf of herself or a putative class and, in any event, she has failed to allege facts sufficient to state a claim under any of the alleged statutes or common law.

Plaintiff Shameda Madia Williams ("Ms. Williams" or "Plaintiff") initially filed suit against Defendants Patriot Home Care, Inc. and Patriot Home Care Holding Company for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and Pennsylvania Minimum Wage Act ("PMWA") 43 P.S. §§ 331.101 *et seq*., as well as for unjust enrichment, seeking declaratory and injunctive relief and monetary damages for herself and on behalf of a putative class of similarly situated employees. (*See generally* Compl.) On June 13, 2022, Patriot Home Care, LLC ("Patriot"), the legal successor to the now-inactive Patriot Home Care, Inc., filed a Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), in which, *inter alia*, it explained that it was the proper party in interest, not Patriot Home Care, Inc., and that Patriot Home Care Holding Company was never operational and, thus not a proper defendant. After consultation between counsel for the parties, on June 27, 2022, Plaintiff filed an Amended Complaint, which names Patriot as a defendant in place of Patriot Home Care, Inc. and does not currently include claims against Patriot Home Care Holding Company. While the Amended Complaint satisfactorily addressed the party issue, it continues to be deficient as a matter of law.

By way of background on the substantive issues, Ms. Williams alleges that she is bringing this case "to challenge Defendant's policy and practice of reducing its employees' regular hourly pay rates if those employees work overtime in order to avoid paying employees the full

compensation to which they are entitled by law." (Am. Compl. at 1.) She alleges "[u]pon information and belief, Defendant maintains or maintained a policy whereby it lowers or lowered the hourly pay rates of employees who work overtime solely because they work overtime." (*Id*. at ¶ 16.) Ms. Williams contends that Patriot's "rate reduction scheme unlawfully deprives Plaintiff and other similarly situated employees of overtime compensation for hours worked over 40 in a workweek." (Am. Compl. at ¶ 65.) Further, she alleges that the "rate reduction scheme also unlawfully deprives Plaintiff and other similarly situated employees of straight-time compensation for hours worked *under* 40 in a workweek with overtime ("overtime gap time")." (*Id*. at ¶ 66.)

The crux of Ms. Williams' personal allegations is that her base pay rate was improperly decreased from $11.00 per hour to $10.25 per hour, and she was thereby unlawfully deprived of the pay differential for straight-time and overtime hours worked between the originally-offered rate and the subsequently-agreed-to rate. ***What Ms. Williams ignores*** is that, before ever commencing work for Patriot, she voluntarily agreed in writing to a lower base rate than she was initially offered. As such, Ms. Williams never experienced a rate reduction during employment and effectively admits not being subjected to the very practice she challenges.

As explained more fully herein, Patriot's pay practices related to occasional base rate changes are legitimate and lawful. Even more importantly, Ms. Williams never personally experienced a reduction in her regular rate of pay at any time during her employment with Patriot. Thus, even if Patriot had a policy as Plaintiff describes – ***which it does not*** – and even if Patriot's policy or practice was unlawful – ***which it is not*** – Ms. Williams was never subjected to it, as her pay rate was only ever ***increased*** during her employment.[1] Moreover, nowhere in the Complaint

[1] While Patriot disagrees with Ms. Williams' characterization of its pay practices, for the purposes of its 12(b)(6) motion, it accepts her allegations as true.

does Ms. Williams allege being deprived of overtime pay at the then-applicable rates. Nor could she. This is also fatal to her claims.

A review of the relevant facts set forth in the Amended Complaint and Exhibits thereto, as more explicitly confirmed by Patriot's pay records (included herewith for the purposes of its 12(b)(1) Motion), indisputably reveals that Ms. Williams lacks standing to pursue her claims individually or on behalf of a class because she has suffered no injury-in-fact. Therefore, this Court lacks subject matter jurisdiction over the action. Indeed, the facts evident just from the face of the Amended Complaint and Exhibits make clear that Ms. Williams has failed to state any claim upon which relief can be granted. Since there are no omitted facts which, if pled, would allow her claims to survive, Patriot respectfully requests this Court dismiss this case with prejudice pursuant to F.R.C.P. 12(b)(1) and/or 12(b)(6).

## I. RELEVANT FACTUAL BACKGROUND

Ms. Williams began work for Patriot in February 2021 as a direct care worker ("DCW"). (Am. Compl. at ¶¶ 1, 27.) Specifically, she started employment on February 17, 2021. (*See* Am. Compl. Ex. C and D.)

Prior to starting work, Ms. Williams signed a number of documents related to her employment. She alleges that, on February 10, 2021, Patriot advised her that her base rate of pay would be $11.00 per hour.[2] (*Id.* at ¶ 28, Ex. B.) She further alleges that, on February 15, 2021, Patriot sent her a form to sign electronically, which listed her "New Rate" of pay as $11.00 per hour, to be effective as of February 17, 2021. (Am. Compl. at ¶ 29 and Ex. C.) She signed that form, and a Patriot representative countersigned it. (*Id.*) She then alleges that, after signing the

[2] "Base rate," as used in Patriot's rate sheets means the rate at which regular, non-overtime hours are paid. It is intended to be synonymous with the term "regular rate" under the FLSA.

first rate sheet, she "was told … that because of the number of hours she was scheduled to work each week [(56)], her hourly pay rate would be changed from $11 to $10.25." (*Id.* at ¶ 30.) Accordingly, on February 16, 2021, Patriot sent her a revised rate sheet to sign, which now listed her "New Rate" of pay at $10.25 per hour. (*Id.* at ¶ 31 and Ex. D.) Like the first form, this rate sheet also indicated that the "New Rate" would be effective on February 17, 2021. (*Id.* at Ex. D.) Ms. Williams electronically signed the updated rate sheet on February 16, 2021, before she started working, and a Patriot representative countersigned it. (*Id.*) Patriot will refer to these documents collectively as the "Pre-Employment Communications."

Ms. Williams alleges she consistently worked over 40 hours per week and was paid at the regular rate of $10.25 per hour "from on or around the beginning of her employment to sometime on or around November 9, 202[1]." (*Id.* at ¶ 40.) At that time, her regular hourly rate was increased, prospectively, from $10.25 to $11.00. (*Id.* at ¶ 41 and Ex. E.) Ms. Williams's employment relationship with Patriot ended in January 2022. (*Id.* at ¶ 1.)

Patriot paid Ms. Williams overtime (1.5 times the regular rate) for all hours she worked each week in excess of 40, based on the above-referenced regular hourly rates of pay. Ms. Williams does not deny this. Nor could she, as the same is plainly reflected on Patriot's payroll records.[3]

## II. STANDARD OF REVIEW

### A. <u>Rule 12(b)(1): Lack of Subject Matter Jurisdiction</u>

"Article III standing is essential to federal subject matter jurisdiction[.]" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). In order to have standing to bring a

[3] To further demonstrate that Ms. Williams lacks standing to bring this case such that Patriot's motion should be granted pursuant to F.R.C.P. 12(b)(1), Patriot has attached the entirety of Ms. Williams' pay records as Exhibit 1 hereto. A review of these records makes clear that her rate of pay was never reduced during her employment and she was paid legally appropriate overtime for all hours worked over 40 per week based on her then-applicable regular rate of pay.

claim, Article III of the United States Constitution requires that a plaintiff suffer an injury-in-fact. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). An injury-in-fact is defined as an invasion of a legally-protected interest which is both concrete and particularized and actual or imminent. *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 208-09 (3d Cir. 2007). The requirements for standing do not change in the class action context. *In re Horizon*, 846 F.3d at 634. The named plaintiff must allege a personal injury in order to fairly and adequately protect the interests of the putative class. *Id.* If the named plaintiff cannot plausibly allege an injury-in-fact, the class action is improper. *Id.*

"When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether the defendant is making a 'facial or factual challenge to the court's subject matter jurisdiction.'" *Chesbro v. United States*, No. 1:18-CV-88-SPB, 2020 WL 3573768, at *1 (W.D. Pa. June 30, 2020). "In either situation, it is the plaintiff's burden to demonstrate the existence of subject matter jurisdiction." *Id*.

"In reviewing a ***facial*** attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (emphasis added), *modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). In other words, a facial attack under Rule 12(b)(1) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6), set forth in the following section. By contrast, in reviewing a ***factual*** attack, the court may consider evidence outside the pleadings. *Id*. If the defendant makes a factual attack and presents evidence, "the court must permit the plaintiff to respond with evidence supporting jurisdiction. [] The court may then determine jurisdiction by weighing the evidence presented by the parties." *Id*. at 177. In

this regard, the court need not defer to the plaintiff's version of facts if the defendant presents credible evidence to the contrary.

### B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must establish the complaint contains sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although under this standard this Court must accept the Amended Complaint's allegations as true, the Court is not, "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation marks omitted). Put differently, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id*. When reviewed with this standard in mind, Plaintiff's Amended Complaint is plainly insufficient as a matter of law, since this Court need not give any deference to her contentions regarding the illegality of Patriot's pay practices.

## III. LEGAL ARGUMENT

Plaintiff's Amended Complaint is legally insufficient to survive the instant Motion to Dismiss. As explained more fully below, dismissal of Plaintiff's Amended Complaint is appropriate under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). Using Plaintiff's pay records coupled with the allegations in the Amended Complaint and attached Exhibits, Patriot can demonstrate that Ms. Williams has not suffered an injury-in-fact for the purpose of standing, making dismissal appropriate under Fed. R. Civ. P. 12(b)(1). Patriot further contends that, even under the more

deferential Rule 12(b)(6) standard, and relying solely on the allegations in the Amended Complaint and Exhibits attached thereto, Ms. Williams fails to state a claim for which relief can be granted. Because there are no additional facts that could be alleged to salvage Ms. Williams' claims, the Court should dismiss this case in its entirety with prejudice.

### A. The Amended Complaint Cannot Survive a Factual Challenge to the Court's Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).

Preliminarily, "Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework." *Bansept v. G & M Automotive*, 434 F. Supp. 3d 253, 258 (E.D. Pa. Jan. 22, 2020). The FLSA provides that, with respect to non-exempt employees, "no employer shall employ any of his employees who in any workweek is engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Put more simply, under the FLSA and PMWA, generally speaking, non-exempt employees must be paid an hourly rate of at least 1.5 times their regular rate of pay for all hours over 40 worked in a given workweek. "Courts interpret 'regular rate' to mean 'the hourly rate ***actually paid*** the employee for the normal, non-overtime workweek for which he is employed.'" *Malamphy v. Abundant Life Home Health Agency, Inc.*, No. 8:16-CV-327-T-17TGW, 2017 WL 2876310, at *2 (M.D. Fla. May 4, 2017) (emphasis added).

"To state a *prima facie* claim for an FLSA overtime violation, a plaintiff must allege that: (1) the plaintiff was an 'employee,' as defined by the FLSA; (2) the defendant was 'engaged in commerce,' as defined by the FLSA; and (3) the plaintiff was not paid overtime compensation for hours worked in excess of forty in a given week." *Jordan v. Meridian Bank*, No. CV 17-5251, 2018 WL 6079314, at *2 (E.D. Pa. Nov. 20, 2018) (citation omitted). The FLSA defines

"employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Under the Act, "'employ' includes to suffer or permit to work." 29 U.S.C. § 203(g).

**1. Pay records show Ms. Williams never experienced a rate decrease during her employment and that she was paid 1.5 times her agreed-upon regular rate for all hours above 40 in each workweek.**

The Amended Complaint is grounded in Ms. Williams' belief that Patriot has a policy by which it reduces an employee's regular rate of pay if the employee works overtime, in an effort to avoid paying a higher overtime rate. While Patriot unequivocally denies that it has such a policy or practice, this dispute need not be resolved for the purposes of the Rule 12(b)(1) Motion. This is because Ms. Williams' pay records demonstrate beyond dispute that, throughout the entirety of her employment with Patriot, she never experienced a reduction in her regular rate of pay. (*See generally* Exhibit 1.) Indeed, from the beginning of her employment on February 17 through November 6, 2021, she was paid at the agreed-upon regular rate of $10.25 per hour reflected in the last of the Pre-Employment Communications. (Ex. 1; Am. Compl. Ex. D.) During that period, she was also paid the legally-appropriate overtime rate of $15.375 per hour—one-and-one-half times the regular rate—for all hours worked over 40 in a workweek. Then, from November 7, 2021 through the conclusion of her employment, she was paid at the ***increased*** regular rate of $11.00 per hour. (Ex. 1; Am. Compl. Ex. E.) Once her rate was increased, she was paid the legally-appropriate overtime rate of $16.50 per hour for all hours worked over 40 in a workweek. (Ex. 1.)

**2. Because Ms. Williams has suffered no injury-in-fact, this Court lacks subject matter jurisdiction.**

Since Ms. Williams was properly paid for hours worked, and was never subject to a rate decrease, she cannot establish any statutory or common law violation or injury-in-fact. This, in turn, precludes Ms. Williams from demonstrating standing to support this Court's Federal question

jurisdiction over the FLSA claim or supplemental jurisdiction over the PMWA or common law claims. Therefore, the Amended Complaint should be dismissed as the Court lacks jurisdiction to further process any of the asserted claims.

### B. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted for Overtime Violations Under the FLSA or PMWA.

Even under the more deferential Rule 12(b)(6) standard, the Amended Complaint is fatally flawed and should be dismissed. Although Ms. Williams attempts to characterize Patriot's pay practices as nefarious throughout the Amended Complaint, she fails to state a claim under the FLSA and PMWA because Patriot's pay practices are actually lawful and legitimate. Further, even if the challenged pay practice was unlawful, Ms. Williams was not subjected to it. Therefore, she fails to state a claim for relief on behalf of herself or others.

#### 1. Patriot's pay practices are lawful.

First, under federal and Pennsylvania law, an employer and employee may agree to a wage ***at any point*** during the employment relationship provided that applicable minimum wage and overtime requirements are met. *See* U.S. Department of Labor, Wage and Hour Division, Fact Sheet #70, FAQ #2 ("The Act does not preclude an employer from lowering an employee's hourly rate, provided the rate paid is at least the minimum wage..."), *see also* 43 P.S. § 260.4 ("It is the duty of every employer to notify his employees [of] rate of pay ... any change of [rate of pay] prior to the time of said change."). Ms. Williams has not alleged, and cannot allege, any facts that would tend to show Patriot changed her rate of pay without notice or that she was not paid the minimum wage. Indeed, the factual allegations in the Amended Complaint demonstrate that her regular rate of pay was, at all times, substantially above minimum wage, and that Patriot notified and required her to agree to any change in her pay rate – including the ***increase*** in her regular rate she was given in November 2021. The Pre-Employment Communications illustrate that Plaintiff's regular rate of

pay was set prior to her ever starting work. The fact that her rate was set at $11.00 per hour on February 15, 2021, and readjusted one day later to $10.25 per hour on February 16, 2021 – all in written notices countersigned by Ms. Williams before she began working – are facts that run counter to her claims of unlawful practices of rate decreases during employment.

Second, the FLSA regulations only prohibit retroactive rate changes and not prospective ones. Contrary to Ms. Williams' characterization in paragraphs 10 and 44 of her Amended Complaint, 29 C.F.R. § 778.316 only prohibits an employer from retroactively reducing an employee's regular rate of pay ***after*** the employee has already worked substantial overtime hours. ***Nothing*** in the regulation prohibits Patriot's policy or practice. ***Nothing*** in the Amended Complaint plausibly alleges that Ms. Williams, or any other Patriot employee, was subjected to a retroactive rate reduction based on the number of overtime hours they had worked.

Third, there is no case law supporting Ms. Williams' theory of liability. Patriot has been unable to find any case law from the Third Circuit related to alleged wage rate reduction schemes. Indeed, the few published cases from other jurisdictions involving alleged wage reduction schemes actually show the legitimacy of Patriot's pay practices. By way of example, the Ninth Circuit recognized that it is permissible under the FLSA to reduce the regular rate of pay to accommodate the desire of a worker to work additional hours. *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 797 (9th Cir. 2010). Further, it is well settled that employees may choose to be paid at a reduced hourly rate where the rate change is not made in response to fluctuating weekly schedules.

Indeed, "employers may not decrease employees' hourly rate based on the number of hours ***worked***, set the hourly rate for overtime at a rate ***lower than the regular rate*** … or set the hourly rate for regular work lower ***during weeks when overtime is worked***." *Malamphy v. Abundant Life Home Health Agency, Inc.*, 2017 WL 2876310, at *2 (M.D. Fl. May 4, 2017). In that case, the

"[d]efendants claim[ed] that in order to accommodate the scheduling wishes of their employees, employees [could] mutually agree with the Defendants to receive a reduced 'regular rate' for each pay period during which the employees wish[ed] to work overtime." *Id*. The court granted partial summary judgment to the plaintiffs, holding: "Here, it is undisputed that the Defendants did not pay overtime, at least in some instances, at the same 'regular rate' of pay that employees received during normal, non-overtime workweeks. Thus, the Plaintiff is entitled to partial summary judgment on liability for any workweeks in which putative class members worked more than 40 hours, but were not paid overtime at the 'regular rates'[.]" *Id*. at *3.

Similarly, in *Walsh v. Kynd Hearts Home Healthcare, LLC*, "[t]he Complaint allege[d] that Defendants paid their employees at one 'regular rate' of pay during normal, non-overtime workweeks, and at another, lower rate of pay during the weeks that the employees worked overtime." 2022 WL 1018636, at *3 (E.D. Va. Apr. 5, 2022). There, the court found that the allegations in the complaint were sufficient to survive a motion to dismiss because the defendants' alleged practice "creates an artificial 'regular rate' in violation of the FLSA." *Id*. at *4.

Here, by contrast to the plaintiffs in *Malamphy* and *Walsh*, Ms. Williams has not alleged that she was paid one rate in weeks during which she worked overtime and a different, higher rate in weeks that she did not. Indeed she has not alleged that she experienced a variable pay rate at all. Nor has she alleged a failure to receive overtime pay at the assigned rates. The collective absence of such allegations mandates dismissal.

**2. Even if the Court finds the pay practice at issue questionable, the Complaint does not allege Ms. Williams was subjected to it.**

"[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 242 (3d Cir. 2014) (citation omitted). On

its face, the Amended Complaint fails to state a claim for relief under the FLSA or PMWA because it does not allege any facts that would allow the Court to draw the inference that Patriot changed Ms. Williams's pay rate improperly during her employment or that she was denied overtime pay to which she was entitled. The absence of such allegations is fatal to her claims.

The Amended Complaint quotes 29 C.F.R. § 778.316 for the proposition that "it is settled under the Act that where a rate has been agreed upon as applicable to a particular type of work the parties cannot lawfully agree that the rate for that work shall be lower merely because the work is performed during the statutory overtime hours, *or during a week in which statutory overtime is worked*." (Am. Compl. at ¶ 10.) "The regulations further state that '*where different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—the longer he works the lower the rate—the device is evasive and the rate actually paid in the shorter or nonovertime week is his regular rate for overtime purposes in all weeks*.' 29 C.F.R. § 778.327 (emphasis added)." (*Id*. at ¶ 11.) Her reliance on these regulations, however, is misplaced.

Ms. Williams has not alleged that she was paid a different regular rate week to week depending on whether or not she worked more than forty hours. Rather, she alleges that, at the time she was told she would have a starting rate of $10.25 instead of $11.00, ***before she began working***, she was scheduled to work 56 hours per week. She believes that Patriot changed her offered regular rate because she was ***projected*** to work overtime. Even if that were true, Ms. Williams has not alleged facts to show that Patriot's actions were inconsistent with the FLSA or the quoted regulations. The Pre-Employment Communications establish that Plaintiff was well aware of her base rate before ever working, and she agreed to that rate in writing before ever performing any work. She could have elected not to start working at all if she was dissatisfied

with the $10.25/hour rate. Further, there is no evidence that she was paid different rates from week to week even if her hours varied. Finally, given that she had not yet begun working at the time she agreed to the $10.25/hour rate, it cannot be argued that such rate was imposed only by the number of hours ***worked*** by Plaintiff.

The Amended Complaint and the attached Exhibits establish that, ***before she began working for Patriot***, Ms. Williams agreed to an hourly pay rate of $10.25. Ms. Williams ***does not allege*** facts to suggest that Patriot only paid her the straight-time rate of $10.25 even for overtime hours. Nor could she, because that would defy reality. Nor does she allege that Patriot failed to appropriately pay her overtime after her base rate was increased to $11.00 per hour. All she claims is that the $10.25 hourly rate agreed to on February 16, 2021 was a "reduced hourly rate" and, therefore, the overtime rate she was paid based on it was legally insufficient. (Am. Compl. at ¶ 40.) The problem, however, is that from the start of her employment until the time she received a pay increase, ***Plaintiff was only ever paid a regular rate of $10.25,*** consistent with the phrase "New Rate" reflected on Exhibit D of the Pre-Employment Communications. "Courts interpret 'regular rate' to mean 'the hourly rate ***actually paid*** the employee for the normal, non-overtime workweek for which he is employed.'" *Malamphy v. Abundant Life Home Health Agency, Inc.*, No. 8:16-CV-327-T-17TGW, 2017 WL 2876310, at *2 (M.D. Fla. May 4, 2017) (emphasis added). Plaintiff did not experience a reduction of her regular rate because she worked overtime hours. Indeed, Ms. Williams did not experience a reduction of her regular rate at all. She agreed to a regular rate of $10.25 per hour before she worked any hours for Patriot. She was paid that regular rate for all hours up to forty in a workweek, and one and one-half times that regular rate for hours above 40 in a workweek. The Amended Complaint does not allege otherwise.

Even viewing all facts in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, there is still no allegation that Patriot failed to pay Plaintiff overtime wages due. Therefore, the Amended Complaint fails to state a claim under the FLSA or PMWA and should be dismissed.

### C. Plaintiff's Amended Complaint Fails to State a Claim for Unjust Enrichment

> A claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but **in spite of the absence of an agreement**, when one party receives unjust enrichment at the expense of another.
>
> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Vacula v. Chapman*, 2020 Pa. Super. 50, 230 A.3d 431, 437 (Pa. Super. 2020). Here, even if the Court has subject matter jurisdiction over the FLSA or PMWA claims, which it does not, Ms. Williams has not pled any facts to support a claim for unjust enrichment. As evidenced by the Exhibits to the Amended Complaint, Ms. Williams agreed in writing to each hourly rate at which she was paid, before she started to perform any work on Patriot's behalf at such rate. Accordingly, Ms. Williams does not plausibly allege any facts that would allow the Court to draw the inference that Patriot received or retained any benefits from her to which it was not entitled. For this reason, the unjust enrichment claim should also be dismissed.

### D. The Amended Complaint Should be Dismissed With Prejudice.

If this Court grants Patriot's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), it must decide whether to allow Plaintiff leave to amend. Leave to amend should not be granted where

amendment would be futile. *See Arthur v. Maersk, Inc*., 434 F.3d 196, 204 (3d Cir. 2006). Futility means that the proposed amendment would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In determining futility, this Court should apply the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6).

Here, any leave for Ms. Williams to amend would be futile because no facts exist that can save her claims. She cannot simply invent facts to insert in a second amended complaint to allege that Patriot failed to pay her overtime due or had a pay policy that violated the FLSA or PMWA. If such allegations existed, she would have already pled them. Permitting her leave to amend would not remedy the shortcomings of the Amended Complaint, so dismissal with prejudice should be reflected in the final Order. *See Williams v. Amazon, Inc.,* No. CV 20-408-KSM, 2021 WL 5631753, at *5 (E.D. Pa. Nov. 30, 2021*)* (dismissing certain claim with prejudice and without leave to amend when plaintiff could not possibly allege new facts in amended pleading to cure identified pleading defects).

## IV. CONCLUSION

Ms. Williams was paid properly for all hours worked, based on the wage rates she agreed to in writing before she started working for Patriot. Further, irrespective of her allegations regarding Patriot's rate reduction practice, she herself never experienced a rate reduction during her employment. Ms. Williams has not suffered any cognizable injury that this Court can remedy and there is no credible evidence that Patriot's pay practices violate the FLSA or PMWA or resulted in unjust enrichment. Accordingly, Patriot respectfully requests that this Court grant this Motion to Dismiss pursuant to Rule 12(b)(1) or 12(b)(6) and dismiss Plaintiff's Amended

Complaint with prejudice.

Dated: July1, 2022

Respectfully submitted,

/s/ *Jennifer Platzkere Snyder*
Jennifer Platzkere Snyder (PA ID 76775)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19103
Telephone: 215-575-7000
*Attorney for Defendant Patriot Home Care, LLC*